CULPEPPER, Judge.
The plaintiff, Bobby Gist Pontiac, claims ownership of a 1968 Ford pickup truck by virtue of an assignment of a certificate of title from Curtis Ray Mays on May 6, 1971. The defendant, Donaldson Ford Company, Inc., had possession of the truck at the time this suit was filed, and claims ownership under a verbal sale from Mays on the previous day, May 5, 1971. The district judge found there was a sale to de *146 fendant on May S, and recognized defendant as the owner of the truck. Plaintiff appealed.
A stipulation filed in this court states that by agreement of both parties defendant sold the Ford truck in question for $1,400 and agrees to pay plaintiff this amount if plaintiff prevails on appeal.
The facts show that on May 5, 1971 Curtis R. Mays and his wife went to the used car lot of Donaldson Ford Company, Inc. and entered into negotiations with a salesman, Joe R. Simoneaux. This salesman testified that Mays picked out a 1968 Buick, which he test drove. They then agreed on a price of $2,895 for the Buick, and that Mays would trade in his 1968 Ford pickup truck for $1,200, leaving a difference of $1,695 owed by Mays. A document nominated “Retail Buyer’s Order” shows these figures and is signed by Mays. It was not signed on May 5 by any person representing Donaldson Ford Company, Inc. The document states on its face: “This is not an order until accepted by an official of the company”. In explanation of this instrument and its effect, Simoneaux testified that he could not make a sale for the company without the approval of Mr. Eddie Kyle, the used car sales manager.
Simoneaux testified further that after the “Retail Buyer’s Order” was signed by Mays, his wife drove the Buick away, and Simoneaux and Mays went to the Mays residence to get the certificate of title to the truck. They were unable to find the certificate. He says they also went to Myers Insurance Agency to have Mays’ insurance coverage changed from the truck to the Buick. Mrs. Virginia Miller, an employee of the agency, testified that such a change was requested on May 5, but no such change of insurance coverage was ever made. She does not explain why.
The testimony of Simoneaux also relates that he and Mays then returned to Donaldson Ford Company, Inc., where Mays took his belongings from the truck and left it in defendant’s possession.
Mr. Eddie Kyle, defendant’s used car sales manager, gave substantially the same testimony as Simoneaux. Kyle says that Mays signed only a “work sheet.” This is the same as the “Retail Buyer’s Order” referred to above. Kyle testified no bill of sale of the Buick was given to Mays because he hadn’t signed the chattel mortgage as required by the finance company. Kyle also conceded that the negotiations for a sale made by Simoneaux had to be approved by him. Additionally, Kyle testified that the only reason all of the necessary papers for the sale were not completed and signed on May 5 was that it was after 5:00 p. m., and there was no one in the office to do the necessary typing.
Mr. Bob Coleman, a salesman for the plaintiff Gist Pontiac Company, testified that early on the morning of May 6, 1971, Mays and his wife came to their used car lot shopping for an automobile. They agreed on a 1970 Pontiac for a price of $3,695 and a trade-in allowance of $1,400 on the Ford truck. A contract of sale to this effect was drawn and signed by Mays and by Mr. Bobby Gist. The certificate of title to the Ford truck was assigned by Mays to the Pontiac Company and a copy of that document is in evidence.
Coleman testified further that Mays told him about the negotiations with the Ford Company the previous day and showed him the “Retail Buyer’s Order” which Mays had signed. Coleman says he told Mays that this document was only a “work order”, that it was not a binding sale agreement, and that he would take the Buick automobile back to the Ford Company and pick up the truck. Coleman also testified that Mays told him he only had the Buick on approval and had until noon to decide whether to buy it.
On May 6 Coleman returned the Buick to the Ford Company and requested that *147 they deliver to him the possession of the Ford truck, but they refused.
In a separate suit, the record of which is filed in evidence in these proceedings, Donaldson Ford Company, Inc. sued Curtis R. Mays for the balance of $1,695 due on its alleged sale of the Buick, and asserted a vendor’s lien. Pursuant to a default judgment in those proceedings, the Buick automobile was seized and sold to Donaldson Ford Company, Inc.
Under these facts, the plaintiff, Bobby Gist Pontiac, contends that he is the owner of the Ford truck by virtue of the bill of sale and assignment of certificate of title from Mays on May 6, 1971. Plaintiff’s position is clearly correct unless the defendant, Donaldson Ford Company, has shown that it is the owner by virtue of a previous sale from Mays on May 5, 1971. Defendant contends that an automobile can be sold without compliance with the Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq. And that such a sale is valid against third parties if perfected in conformity with the pertinent provisions of our Civil Code, LSA-C.C. Articles 2456 and 2247. They cite General Finance Corporation of New Orleans v. Bobby Joe Harrell, La.App., 188 So.2d 211 and Robinson v. Jackson, La.App., 255 So.2d 846. We do not reach a consideration of these issues.
This case can be decided under the following articles of our Civil Code:
“Art. 1798. As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point.”
******
“Art. 1800. The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract.”
The “Retail Buyer’s Order”, which was signed by Mays, states on its face “This is not an order until accepted by an official of the company.” Mays had a right to rely on this document which reduced to writing their verbal negotiations. He did so, as is evidenced by the fact that he traded the truck on a different automobile the next morning. Mays was not called as a witness by either party. But defendant’s own witnesses admitted the sale was not perfected until it was approved by Mr. Kyle, the used car sales manager. Mr. Kyle testified that he did not sign the “Retail Buyer’s Order” until May 6. He was not asked, and did not testify, whether he signed it before or after he received notice that Mr. Mays had withdrawn his offer and sold the truck to the Pontiac Company. It was clearly the burden of the defendant to prove that the sale to it was perfected before the offer by Mays was withdrawn. Defendant has failed to sustain this burden.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff and against the defendant for the sum of $1,400, together with legal interest thereon from October 1, 1971, until paid. All costs in the trial and appellate courts are assessed against the defendant.
Reversed and rendered.